FILED

2020 Sep-21  PM 01:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **NOAH SKELTON**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-01240-CLM** |
| | ) | |
| **BIRMINGHAM AIRPORT** | ) | |
| **AUTHORITY**, | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Noah Skelton, a white man, sues his employer, the Birmingham Airport Authority ("the BAA"), alleging that the BAA has treated him unfavorably as compared to his African American and female coworkers. Skelton also asserts that the BAA retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, through § 1983.

The BAA seeks summary judgment. Doc. 36. It has also moved to strike several of Skelton's evidentiary submissions. Doc. 50. After considering the evidence, the briefs, and the applicable law, the court **GRANTS** the BAA's motion for summary judgment (doc. 36) and **DENIES as MOOT** the BAA's motion to strike (doc. 50).[1]

---

[1] In its motion to strike, the BAA asks the court to strike from the record evidence related to disciplinary actions taken against Skelton since the filing of this lawsuit. The BAA also objects to

## BACKGROUND

**I.      Skelton's employment with the BAA.**

The BAA operates the Birmingham-Shuttlesworth International Airport in Birmingham, Alabama. As of 2019, the racial makeup of the BAA is anywhere from 65 to 70% African American. Since April 2014, Skelton has worked for the BAA as an Operations Specialist I ("Ops I"), which means that he provides customer service and security for the airport.

On June 8, 2016, Andy Cuesta, a fellow Ops I, reported that Skelton had been bothering him at work by repeatedly complaining about their shared supervisors David and Cameron Thompson. Cuesta reported that Skelton had told him that "Cam is not [sic] a 'fair' person only with the female ops I and II, but not the men." Doc. 37-13 at 102. Skelton also told Cuesta that David Thompson "favors only a certain class of people and not others." *Id.* Eight days after Cuesta filed his complaint, Jim Payne, the BAA's Director of Operations, issued Skelton a written reprimand for "attempting to create an environment of discontent toward the organization and management amongst [his] coworkers" and for showing "a continued pattern of failing to follow standard operating procedures." Doc. 37-2 at 2. In support of the

Skelton's inclusion of the BAA's EEOC position statement within his evidentiary submission. Even if this court concluded that either the evidence related to the BAA's most recent disciplinary actions against Skelton or the BAA's position statement was admissible, it would not change the result of this opinion. So the motion to strike is denied as moot.

written reprimand, Payne noted that Skelton's record revealed that since July 2014

his supervisors had disciplined him for these incidents:

- July 30, 2014: Failing to perform an adequate sweep and locking a family in the Sterile Area;

- July 30, 2014: Failing to perform an adequate security sweep of the concourse after being discovered parked in a space with the vehicle lights off;

- December 16, 2014: Failing to perform an adequate security sweep of the concourse by not checking the loading bridge doors and restrooms;

- January 19, 2016: Failing to follow the exit lane rotation as instructed by a supervisor;

- March 31, 2016: Using a cellphone while stationed at the exit lane;

- April 7, 2016: Failing to follow procedures regarding shift swaps;

- April 12, 2016: Using a cellphone at the exit lane;

- April 30, 2016: Using a cellphone at the exit lane;

- May 26, 2016: Being found in the break room when not on a break;

- June 1, 2016: Failing to take lunch breaks as instructed;

- June 5, 2016: Using a phone when assigned to landside patrol.

Doc. 37-13 at 100–01.

Skelton signed the written reprimand and continued his employment with the

BAA. Then, in November 2016, Skelton complained to Cameron Thompson that

coworkers had posted a picture of the football player Tim Tebow kneeling and praying to make fun of Skelton for praying (or Tebowing) at work.

Three months after Skelton raised his Tebowing complaint, the BAA suspended him for three days without pay. According to the BAA, Payne, along with human resource managers Wes Williams and Kristi Mays, decided to suspend Skelton for his continued failure to adhere to the BAA's policies and procedures. Skelton's suspension document stated that since the June 2016 written reprimand Skelton's supervisors had disciplined him for:

- July 1, 2016: Backing out of an overtime shift commitment and leaving his supervisor shorthanded;

- July 17, 2016: Backing out of another overtime shift commitment;

- October 18, 2016: Failing to sign out his vehicle/equipment for his shift as directed by his supervisor;

- November 13, 2016: Being found on his cellphone at the exit lane;

- November 16, 2016: Failing to sign out his vehicle and equipment as directed during his shift briefing;

- November 22, 2016: Being found on his cellphone at the exit lane;

- November 27, 2016: Being found on his cellphone at the exit lane and being unable to help determine why a security alarm went off because he had failed to pay attention;

- December 14, 2016: Being found walking in the parking deck while on his cellphone;

- January 12, 2017: Being unable to report a security breach because he manned an exit lane without a radio.

Doc. 37-13 at 85–86.

During the meeting in which Skelton received his three-day suspension, he complained that the BAA was unfairly singling him out for using his phone in the exit lane. Two days later, Skelton filed a charge of discrimination with the EEOC, alleging that his suspension violated Title VII. A little more than a month after Skelton filed his charge of discrimination, he received his 2017 performance evaluation. The performance evaluation rated Skelton as "Meets Expectations" but mentioned Skelton's written reprimand and suspension as evidence that he needed to work on following the BAA's instructions and departmental procedures. Because of the performance evaluation's references to his reprimand and suspension, Skelton wrote in the employee comments section of the evaluation that he "believe[d] some of this evaluation is in response to the EEOC claim I filed." Doc. 37-14 at 104.

In September 2018, over a year after Skelton had complained about his performance evaluation and filed his EEOC charge, David Thompson yelled at Skelton for not answering the phone while on his lunch break. Thompson allowed Joe Doane, Skelton's peer and a non-supervisory employee, to stay in his office while he talked to Skelton about failing to answer the phone. Skelton contends that this incident made him feel uncomfortable, so he reported it to Mays. But the BAA never reprimanded Thompson for yelling at Skelton in front of Doane.

## II.    Misconduct by Skelton's coworkers.

According to Skelton, the BAA favored his African American and female coworkers by not punishing them as harshly for policy violations as it punished him. For example, Skelton objects to the fact that the BAA never disciplined several of his supervisors and fellow Ops I employees for falling asleep at work.

One co-worker who Skelton thinks the BAA treated more favorably is Jennifer Judge. According to Cuesta, he witnessed Judge on her phone at the exit lane for personal reason on at least four separate occasions. And Judge admits that Payne once disciplined her for wearing Bluetooth headphones at work. Additionally, in June 2015, Judge received a written reprimand for having been tardy 13 times within the last six weeks. Judge continued to come into work late, so she received a second written reprimand in October 2015, which stated that she had been tardy 14 times since receiving the first reprimand. Although this second written reprimand states that the BAA would suspend Judge for one day, she claims that she never served a suspension for being late to work.

Another co-worker who Skelton claims engaged in misconduct is Reginald McDonald. In 2014, McDonald allowed an exit lane breach, which led Payne to take a stronger stance on exit lane breaches and to send a memo to employees that exit lane breaches would lead to immediate termination. Although he believes that he reprimanded McDonald for this exit lane breach, Payne could not locate the

reprimand in McDonald's record. Aside from the exit lane breach, McDonald has been involved in a vehicle accident in the parking deck, found asleep in his car, and failed to respond to his radio.

Other examples of BAA employees allegedly engaging in misconduct includes David Thompson telling coworkers "[i]f you see me come in wearing a trench coat, you'll know I'm going to shoot up the place," doc. 37-9 at 47, and Matt Nelson trying to bring a gun past a TSA checkpoint. The BAA suspended Nelson thirty days for the gun incident.

## STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

In his complaint, Skelton asserts claims of race discrimination (Count One), retaliation (Count Two), and gender discrimination (Count Three).[2] *See generally* Doc. 1. And throughout the complaint, Skelton makes several assertions that he was "harassed" while working for the BAA, s*ee, e.g.*, Doc. 1, p. 6, 13, ¶¶ 32, 73, which the BAA understands Skelton may have intended to raise a hostile work environment claim. Like the parties, the court begins by addressing Skelton's race and gender discrimination claims. The court then addresses the retaliation and hostile work environment claims in turn.

## I.   Skelton's race and gender discrimination claims fail as a matter of law.

Skelton first contends that the BAA disciplined him and suspended him for three days without pay because of unlawful race and gender discrimination. Skelton presents no direct evidence of either race or gender discrimination, so the court analyzes his discrimination claims under the frameworks applicable to cases involving only circumstantial evidence of discrimination. One way that Skelton can

---

[2] Skelton brings his race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, through 42 U.S.C. § 1983. Each of these statutes is subject to the same requirements of proof and analytical framework. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981 have the "same requirements of proof and use the same analytical framework"); *Cross v. State of Ala., State Dep't. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) ("When [S]ection 1983 is used as a parallel remedy for violation of [Title VII], the elements of the two causes of action are the same."). Thus, the court addresses only Skelton's Title VII race discrimination and retaliation claims but implicitly applies its analysis to Skelton's §§ 1981/1983 claims.

create a jury question on his discrimination claims is to satisfy the three-part burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973).

Step 1: Under *McDonnell Douglas*, Skelton bears the initial burden of showing "(1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).

Step 2: If Skelton makes out a prima facie case of discrimination, the burden then shifts to the BAA to articulate a legitimate, nondiscriminatory reason for its actions. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Step 3: Should the BAA carry its burden, the burden then returns to Skelton to establish that the BAA's proffered reason for its actions was merely a pretext for unlawful discrimination, an obligation that "merges with [his] ultimate burden of persuading the [factfinder] that [he] has been the victim of intentional discrimination." *Id.* at 256.

But "the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321,

1328 (11th Cir. 2011). Thus, Skelton may also survive summary judgment if he shows "a convincing mosaic of circumstantial evidence" of intentional discrimination. *Id.* Further, Skelton can survive summary judgment under a mixed-motive theory of discrimination by offering "evidence sufficient to convince a jury" that: (1) the BAA took an adverse employment action against him; and (2) a protected characteristic was a motivating factor for the BAA's adverse employment action. *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016).

### A.   Skelton lacks evidence of similarly situated comparators.

The BAA argues that it is entitled to summary judgment on Skelton's race and gender discrimination claims because he lacks evidence that the BAA treated similarly situated female and African American coworkers more favorably. A plaintiff proceeding under *McDonnell Douglas* must show, as part of his prima facie case of discrimination, that he and his more favorably treated coworkers "are similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. A plaintiff will usually be able to make this showing when he and his alleged comparator:

- engaged in the same basic conduct;

- were subject to the same employment policies, guidelines, and rules;

- were under the jurisdiction of the same supervisor; and

- shared similar employment or disciplinary histories.

*See id.* at 1227–28.

Skelton's brief fails to explain which specific coworkers he contends were treated better than he was. Instead, he incorrectly argues that he need not present comparator evidence to make out a prima facie case of discrimination and states in conclusory fashion "that numerous black employees and black female employees, committed the same or similar offenses the BAA alleged were committed by Skelton and these employees were either not disciplined or not suspended as required by policy." Doc. 48 at 41–42. These conclusory assertions fail to meet Skelton's initial burden to show that he was treated differently than similarly situated comparators. *See Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").

Additionally, the court's own review of the record has turned up no coworkers who were "similarly situated in all material respects" to Skelton and were treated more favorably than he was. *Lewis*, 918 F.3d at 1226. Although, during his deposition, Skelton objected to the fact that the BAA never disciplined several of his coworkers for falling asleep at work, he admits that no supervisor ever disciplined him for falling asleep and that "it's kind of accepted" that BAA employees may doze off after the last flight is in. Doc. 37-1 at 10–11. Thus, this evidence fails to show that the BAA treated Skelton differently than similarly situated coworkers.

And although Judge engaged in misconduct, Skelton has failed to show that the BAA treated her better than it treated him. Indeed, the only time Payne caught Judge using a phone in the exit lane he disciplined her. To be sure, Judge's record reflects that she has a history of being tardy to work. But Judge received two written reprimands for her excessive tardiness. And Skelton has offered no evidence that the BAA considered tardiness to be an equivalent offense to talking on a cellphone in the exit lane or the other infractions that he allegedly committed. Thus, the court is unconvinced that evidence that the BAA never suspended Judge for her tardiness establishes that the BAA treated Skelton differently than a similarly situated co-worker. *See Lewis*, 918 F.3d at 1227 (citing with approval *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992), which held that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination").

For similar reasons, the court finds that McDonald is also an inadequate comparator. The only misconduct that McDonald engaged in is: (1) allowing an exit lane breach, (2) being involved in a vehicle accident in the parking deck, (3) falling asleep in his car, and (4) failing to respond to his radio. While the BAA took exit lane breaches seriously, these alleged infractions constitute a different type of misconduct than repeatedly using a cellphone in the exit lane or engaging in insubordination, the primary offenses that the BAA alleged Skelton had committed.

What's more, McDonald's exit lane breach occurred before Payne sent the memo informing Ops Is that allowing an exit lane breach would lead to immediate termination. In fact, Payne testified that he decided to take a stronger stance on exit lane breaches following the breach allowed by McDonald. As the BAA took this stronger stance only after McDonald's exit lane breach, the court cannot say that the BAA's failure to fire or suspend McDonald for this single incident provides evidence that the BAA treated Skelton less favorably than those outside his protected class.

Finally, David Thompson and Nelson are inadequate comparators. Although Thompson engaged in misconduct by telling others at work that "[i]f you see me come in wearing a trench coat, you'll know I'm going to shoot up the place," doc. 37-9 at 47, there are at least two reasons why he and Skelton are not "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. First, this single inappropriate statement differs in both frequency and type from the offenses allegedly committed by Skelton. Second, Payne testified that he was not involved in the investigation into Thompson's comments, so different supervisors disciplined Skelton than investigated Thompson. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."). Combined, these two facts show that Thompson and Skelton are not similarly situated. Similarly, Skelton cannot establish a prima facie case of discrimination by pointing to the BAA's

treatment of Nelson, who the BAA suspended for 30 days for trying to bring a handgun through a TSA checkpoint. Although Nelson's offense was likely more serious than any of the offenses committed by Skelton, the BAA responded to this offense by suspending Nelson for 10 times longer than it suspended Skelton. Thus, Skelton can hardly say that Nelson received more favorable treatment than he did.

In short, the evidence does not show that the BAA treated a similarly situated co-worker who engaged in the same type and frequency of misconduct as Skelton more favorably than it treated him. As a result, Skelton has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* framework.

### B.  Skelton's "convincing mosaic" and "mixed-motive" theories of discrimination fail.

The court thus turns to consider whether Skelton has made the evidentiary showing necessary to survive summary judgment under either a convincing mosaic or mixed-motive theory of discrimination. Skelton hardly tries to advance these theories of discrimination in response to the BAA's motion for summary judgment. Instead, he makes only passing references to cases in which plaintiffs have survived summary judgment under either the mixed-motive or convincing mosaic frameworks. It is not the court's job to advance these theories of discrimination for Skelton. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that litigants need to "plainly and prominently" raise arguments that they wish for the court to consider).

And Skelton's evidence of discrimination falls far short of what is needed to survive summary judgment when asserting either a convincing mosaic or mixed-motive theory of discrimination. Skelton's sole race-related evidence is that (1) David Thompson may have mentioned Skelton in a conversation about white privilege, and (2) around 65 to 70% of BAA employees (and all supervisors) are black. The only statements in the record related to gender come from Cuesta's report that Skelton had told him that he thought Cameron Thompson treated female Ops I and II better than the men.

These facts fail to create a "convincing mosaic" of intentional discrimination. *Cf. Dukes v. Shelby Cty. Bd. of Educ.*, 762 F. App'x 1007, 1013–14 (11th Cir. 2019) ("considerably more evidence . . . is required" to create a convincing mosaic than that (1) the meeting minutes for a specially called meeting incorrectly stated that the plaintiff was there; (2) the defendant misstated the qualifications of its new hire in its EEOC position statement; (3) the defendant employed no African Americans in the workplace; (4) a Board member commented that the Board would consider a "black" if the Board ever received a "decent resumé" from an African American; and (5) that the candidate who received the position the plaintiff applied for had received a reprimand). Nor do these facts show that a motivating factor in Skelton's discipline and suspension was either his race or gender. *Compare Quigg*, 814 F.3d at 1241 (finding that a plaintiff presented sufficient evidence to survive summary

judgment on her mixed motive claim when (1) a school board member told a parent that "it is time to put a man in there"; (2) school board members recommended that the plaintiff hire a tough "hatchet man" to serve as assistant superintendent; (3) school board member told the plaintiff that "she should consider a male assistant superintendent" to achieve gender balance; and (4) a school board member told the plaintiff that she voted against her because she "needed a strong male to work under her to handle problems, someone would could get tough") *with Burton v. Gwinnett Cty. Sch. Dist.*, 756 F. App'x 926, 930 (11th Cir. 2018) ("[T]wo vague statements made by individuals who lacked the power to fire" the plaintiff failed to prove that race was a motivating factor in firing her.).

* * *

In summary, Skelton has not met his initial burden to establish a prima facie case of discrimination under the *McDonnell Douglas* framework. Nor has he created a convincing mosaic of circumstantial evidence of discrimination or shown that either his race or gender were a motivating factor in disciplining him. Thus, Skelton's race and gender discrimination claims are due to be dismissed.

## II.    Skelton fails to establish a prima facie case of retaliation.

Turning to Skelton's retaliation claim, the court once again applies the three-part *McDonnell Douglas* framework: (1) Skelton bears the initial burden to prove a prima facie case; (2) the burden then shifts to the BAA to produce a legitimate,

nondiscriminatory reason for its actions; and finally, (3) the burden returns to Skelton to provide evidence of pretext.

To establish a prima facie case of retaliation, Skelton must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

### A.    Skelton did not engage in protected activity before his suspension.

An employee engages in protected expression when he opposes practices made unlawful by the relevant statute or participates in any way in an investigation under the relevant statute. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). To count as protected activity, a plaintiff's opposition musts stem from a good-faith belief that is objectively reasonable under the existing substantive law. *Id.* at 1351.

Skelton asserts that he engaged in protected activity when he complained to Cuesta that Cameron Thompson treated female operations employees better than he treated male employees. He also contends that his suspension occurred because he "continued to complain" to the BAA about discrimination and that David Thompson retaliated against him by yelling at him in front of his co-workers in September 2018.

Title VII's protections apply "to those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *See*

*Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). Its protections, however, do not extend to those who make an informal complaint to a mere co-worker. *See Fields v. Dep't of Juvenile Justice*, 712 F. App'x 934, 937 (11th Cir. 2017) (holding that jury instructions reflected Eleventh Circuit case law when they stated that the plaintiff could succeed on her retaliation claim only if she made her internal complaint to "anyone above [her] in her chain of command or any human-relations employee"). Cuesta was neither Skelton's supervisor nor a human resources employee when Skelton complained to him about Cameron Thompson. Instead, he, like Skelton, worked as an Ops I. Thus, Skelton did not engage in protected activity when he complained to Cuesta.

And although Skelton argues that his suspension resulted from his continued complaints about discrimination, the only complaint Skelton made in between receiving the written warning and when the BAA decided to suspend him related to his co-workers making fun of him for praying like Tim Tebow. No reasonable juror could find that Skelton had a good-faith, reasonable belief that his coworkers' comments about Tebowing constituted unlawful discrimination. As a result, this complaint cannot support Skelton's retaliation claim. *See Clover*, 176 F.3d at 1351.

### B. Skelton has failed to show that his protected activity was causally connected to an adverse employment action.

The BAA, however, concedes that Skelton likely engaged in protected activity when he: (1) complained in his February 2017 suspension meeting that he thought

the suspension stemmed from discrimination; (2) filed his February 2017 EEOC charge; and (3) wrote within the comments section of his March 2017 performance evaluation that he believed the evaluation related to his EEOC charge.[3] The court therefore must determine whether there is a causal connection between these protected activities and David Thompson's actions in September 2018.

One way a plaintiff can establish a causal connection is by showing that the employer knew of his statutorily protected activity and there was a close temporal proximity between this awareness and the adverse employment action. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). A plaintiff fails to state a prima facie case of retaliation when "there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation." *Id.*

The well over a year gap between Skelton's protected activities and David Thompson's beratement of him in September 2018 is too great to establish causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (suggesting that a three- to four-month passage of time is too long to establish close temporal proximity). And Skelton has not pointed the court to any other evidence that would suggest a causal connection between his protected activities and Thompson's actions

---

[3] Although in March 2017 Skelton stated that the believed his performance evaluation was because of his EEOC charge, he advances no argument that the performance evaluation is an adverse employment action that supports his retaliation claim.

in September 2018. Because Skelton has failed to show a causal link between his protected activity and any adverse employment action, the BAA is entitled to summary judgment on his retaliation claim.

### III.   Skelton has waived the right to assert a hostile work environment claim.

The court finally addresses whether Skelton can proceed to trial on a hostile work environment claim. Although Skelton's complaint includes no standalone hostile work environment claim, his complaint does include several assertions that he was "harassed" while working for the BAA. *See, e.g.*, Doc. 1, p. 6, 13, ¶¶ 32, 73. If Skelton intended for these references to harassment to raise a hostile work environment claim, that claim is due to be summarily dismissed for at least two reasons.

First, allowing Skelton to include a hostile work environment claim through allegations made within his distinct discrimination and retaliation claims would violate the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b). *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into different count each cause of action or claim for relief."); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (calling a complaint a shotgun pleading when it "was framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts"). Thus, if

Skelton intended for the court to consider a distinct claim of hostile work environment, he needed to plead it as a separate count in his complaint.

And Skelton has made no argument in response to the BAA's argument that the hostile work environment claim should be summarily dismissed. Thus, even if Skelton at first intended to assert a hostile work environment claim, the court considers that claim abandoned. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). As a result, the court will summarily dismiss Skelton's hostile work environment claim.

## CONCLUSION

For these reasons, the court determines that the BAA's motion for summary judgment (doc. 36) must be **GRANTED** and the BAA's motion to strike (doc. 50) must be **DENIED as MOOT**. The court will enter a separate order that carries out these findings.

**DONE** and **ORDERED** this September 21, 2020.

COREY L. MAZE
UNITED STATES DISTRICT JUDGE